NOT DESIGNATED FOR PUBLICATION

No. 117,358

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TANNER WARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed March 9, 2018.
Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., PIERRON and LEBEN, JJ.

PER CURIAM: Tanner Ward appeals his convictions for two counts of aggravated
indecent liberties with a child (aggravated indecent liberties). Ward contends the trial
court committed reversible error when it denied his request to instruct the jury on a lesser
included offense of indecent liberties with a child (indecent liberties). Upon our review,
we conclude the trial court did not err in its ruling because instructing the jury to consider
indecent liberties as a lesser included offense in this case would have been factually
improper. As a result, we affirm the convictions.

1

In January 2016, M.C., who was 14-years old, lived with her mother. In the month leading up to January 2016, Ward, who was 22-years old, would sometimes work on his car at M.C.'s house with her sister's boyfriend. M.C. and Ward began a relationship, which M.C. hid from her mother.

At the time, Ward lived with M.C.'s older sister and her sister's boyfriend. M.C.'s mother did not know Ward lived in the same house as her older daughter. On two occasions in January 2016, M.C. spent the night at her sister's house. What happened on those occasions is disputed.

After M.C.'s mother discovered that M.C. was in a relationship with Ward, she told her the liaison was inappropriate. However, her mother's disapproval did not end the relationship. Soon thereafter, Ward began messaging M.C.'s mother on Facebook. Ward asked to personally meet with M.C.'s mother and wrote "I see it as the right thing to accept the consequences of my actions."

On February 3, 2016, Ward met with M.C. and her mother at their home. Ward told M.C.'s mother that he had deep feelings for M.C. and asked for permission to date her. M.C.'s mother denied the request and informed Ward that he was not allowed on her property and he was not to contact M.C. in any way. When asked, Ward and M.C. denied having sexual intercourse with each other. M.C.'s mother confiscated M.C.'s electronics to prevent her from contacting Ward. Although her mother disapproved, M.C. still considered Ward her boyfriend and the relationship continued.

Ward continued to message M.C.'s mother on Facebook in an effort to convince her to allow the relationship with her daughter to continue. Ward messaged, "I want you to know that it was impossible for me to stop it from happening. As much as I truly knew

2

it was wrong, I knew what was right at the same time." M.C.'s mother told Ward that her daughter was four years too young to be in a relationship with him and demanded that he stop talking to M.C.

On Valentine's Day, February 14, 2016, M.C.'s mother and sister told M.C. that Ward had cheated on her by rekindling a relationship with his former girlfriend and mother of his children. This news made M.C. angry. As a result, M.C. told her mother that she had sexual relations with Ward. M.C.'s mother immediately called the police. M.C. told a detective that she had sexual relations with Ward during the overnight stays at her sister's house in January. After Ward learned of the police report, he messaged M.C.'s mother to apologize.

The police investigation was assigned to Detective Scott Carlton. On March 16, 2016, Detective Carlton interviewed Ward. During the interview, Ward denied that he had sexual relations with M.C. Ward told Detective Carlton that they had held hands, but there was not sexual contact. Detective Carlton ordered Ward to stay away from M.C.

Even after the police were contacted, Ward remained in contact with M.C. Unbeknownst to M.C.'s mother, Ward would visit M.C. in her bedroom by gaining entry through a window. Ward would sleep in M.C.'s bedroom where they would have sexual relations. On June 23, 2016, M.C.'s mother went upstairs to M.C.'s bedroom. When she discovered Ward lying in her daughter's bed, M.C.'s mother called the police. Ward climbed out of the bedroom window and was found by the police in a garage behind M.C.'s home.

On July 5, 2016, M.C. told her mother that she wanted to talk to Detective Carlton. After Detective Carlton came to M.C.'s home, M.C. told him that she had lied about having sexual relations with Ward because she was jealous that he had reconciled with his former girlfriend. Shortly after this recantation, however, M.C. requested that

Detective Carlton return, whereupon she admitted that the original report was accurate and she did, in fact, have sexual relations with Ward on those two occasions. M.C. stated she falsely recanted because she did not want to get Ward into trouble.

Ward was charged, in relevant part, with two counts of aggravated indecent liberties for engaging in sexual intercourse with a child 14 or 15 years of age. Prior to trial, Ward requested a lesser included offense instruction of indecent liberties. A jury trial was held on November 29 and 30, 2016. At trial, M.C. testified that on two occasions in January 2016, she and Ward had sexual intercourse at her sister's house. As to both incidents, M.C. explained that Ward's penis penetrated her vagina. According to Detective Carlton, Ward acknowledged that while he and M.C. were at her sister's house on those two occasions, Ward denied having any sexual relations with M.C., and he said they merely held hands.

During trial, Ward reiterated his request for a lesser included offense instruction on indecent liberties. The trial judge denied the request, stating:

> "I certainly understand the reason for the request. The court, the court is aware of that request. I attempted to go back over in my mind and I have a transcript of the testimony. To me it's an either/or situation. There's no, there's either sexual intercourse— there's no evidence presented to the jury to find that there was any fondling or lewd touching. The closest we came was there was a statement the defendant at one time admitted he held hands which in the court's view does not rise to a crime of indecent liberties with a child."

The jury convicted Ward of two counts of aggravated indecent liberties and intimidation of a witness. Ward was sentenced to a controlling term of 83 months in prison. He appeals.

4

On appeal, Ward contends the trial court erred by failing to give a lesser included offense instruction on indecent liberties. Our standard of review is well established:

> "When reviewing the failure to give a lesser included instruction, (1) first, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless." *State v. Soto*, 301 Kan. 969, Syl. ¶ 9, 349 P.3d 1256 (2015).

Preliminarily, it is undisputed that this issue was preserved for appellate review because Ward objected to the trial court's failure to give a lesser included offense instruction. See K.S.A. 2017 Supp. 22-3414(3); *State v. Brammer*, 301 Kan. 333, 341, 343 P.3d 75 (2015) ("[A]n attorney must object on the record to the giving or omission of an instruction before the jury retires to consider the verdict, with counsel clearly stating the reason for the objection.").

Next, Ward claims a lesser included offense instruction on indecent liberties was legally appropriate because indecent liberties is a lesser degree of aggravated indecent liberties. The State counters that the lesser included offense instruction was not legally appropriate because all of the elements of indecent liberties are not identical to some of the elements of aggravated indecent liberties.

When considering the legal appropriateness of an instruction, "appellate review is unlimited, as with all questions of law." *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d

202 (2012). A lesser included offense instruction is legally appropriate if the lesser crime is an included offense of the charged crime. 295 Kan. at 161.

Under K.S.A. 2017 Supp. 21-5109(b), a lesser included crime is:

"(1) A lesser degree of the same crime, except that there are no lesser degrees of murder in the first degree under subsection (a)(2) of K.S.A. 2017 Supp. 21-5402, and amendments thereto;

"(2) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;

"(3) an attempt to commit the crime charged; or

"(4) an attempt to commit a crime defined under paragraph (1) or (2)."

Ward was charged and convicted of aggravated indecent liberties pursuant to K.S.A. 2015 Supp. 21-5506(b)(1). This particular sex crime prohibits "[s]exual intercourse with a child who is 14 or more years of age but less than 16 years of age." K.S.A. 2015 21-5506(b)(1). In relevant part, sexual intercourse is defined in K.S.A. 2015 Supp. 21-5501(a) as "any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse."

Relevant to this appeal, indecent liberties is engaging in "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both" when the child is either "14 or more years of age but less than 16 years of age." K.S.A. 2015 Supp. 21-5506(a)(1).

The State is correct that all of the elements of indecent liberties are not identical to some of the elements of aggravated indecent liberties. For example, while the crime of indecent liberties requires proof of an intent to arouse or to satisfy sexual desires, no such

6

intent must be proven as an element of the crime of aggravated indecent liberties. However, the State does not address whether indecent liberties is a lesser degree of aggravated indecent liberties. "[A] crime may be a lesser included offense not only when there is an identity of elements but also when one crime is a lesser degree of the other." *State v. Shumway*, 30 Kan. App. 2d 836, 846, 50 P.3d 89 (2002).

It is noteworthy that in denying Ward's request for a lesser included offense instruction on indecent liberties, the trial court did not find the instruction was *legally* appropriate. Rather, the trial court seemingly assumed that indecent liberties was, as a matter of law, a lesser included offense of aggravated indecent liberties. Given that assumption, the trial court proceeded to consider and then reject that such a lesser included offense instruction was *factually* appropriate under the unique circumstances of this case. On appeal, Ward presents a two-sentence argument in support of the legal notion that indecent liberties is a lesser degree of the crime of aggravated indecent liberties.

We will follow the trial court's lead in analyzing this issue on appeal. In our review of the trial court's ruling, we assume—without deciding—that indecent liberties is, as a matter of law, a lesser included offense of aggravated indecent liberties. As a result, we will next consider whether such an instruction was factually appropriate in this case.

When an offense includes a lesser included crime, the failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate. *State v. Knighten*, 51 Kan. App. 2d 417, 433-34, 347 P.3d 1200, *rev. denied* 302 Kan. 1016 (2015). Lesser included offense instructions must be given if "there is some evidence which would reasonably justify a conviction of some lesser included crime." K.S.A. 2017 Supp. 22-3414(3). To determine if the instruction is factually appropriate, the court considers whether "'there was sufficient evidence, viewed in the

7

light most favorable to the defendant or the requesting party, that would have supported the instruction.'" *State v. Perez*, 306 Kan. 655, 667-68, 396 P.3d 78 (2017) (quoting *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 [2016]). If so, then the lesser included offense instruction must be given.

As referenced earlier, indecent liberties is engaging in "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both" when the child is either 14 or more years of age but less than 16 years of age. K.S.A. 2015 Supp. 21-5506(a)(1). Was there trial evidence that Ward engaged in lewd fondling or touching of M.C. with the intent to arouse or satisfy the sexual desires of either him or M.C.?

On appeal, Ward claims an indecent liberties instruction was factually appropriate because of Ward's admission to Detective Carlton that he and M.C. held hands. Ward concedes that, by itself, "holding hands is probably not lewd," but he argues that error occurred because "any romantic touching between a 14-year old and a 22-year old in the circumstances presented in this case would support a finding of lewd touching." Specifically, Ward emphasizes that because he and M.C. held hands while alone and in a secret relationship, an instruction on indecent liberties was factually appropriate. The State underscores the trial court's finding that, under these factual circumstances, holding hands did not constitute lewd fondling or touching.

We are aided in our review by our Supreme Court's exposition on what constitutes lewd touching:

> "[W]hether a touching is lewd should be determined by considering the common meaning of the term 'lewd,' that is, whether a touching is 'sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination;

8

indecent, obscene, or salacious.' In considering if a touching meets this definition, a factfinder should consider whether the touching 'tends to undermine the morals of a child [and] . . . is so clearly offensive as to outrage the moral senses of a reasonable person.' [Citations omitted.]" *State v. Ta*, 296 Kan. 230, 242-43, 290 P.3d 652 (2012).

As emphasized by Ward, the circumstances surrounding the touching are considered when determining whether the touching or fondling is lewd. See 296 Kan. at 243.

In *Ta*, the defendant approached two young girls, aged 2 and 3-years old, and their mothers outside a movie theater and introduced himself. During his conversation, the defendant touched the children on their faces, hair, arms, and legs. In particular, the defendant's touches included tucking one girl's hair behind her ear, rubbing his fingertips up and down her arm, caressing her face, and rubbing his hand up and down her upper leg. After the police were summoned, the defendant told the officer "'that he had a problem, that he wanted to go speak with a doctor and then stated that he felt that he was a danger.'" 296 Kan. at 233. Ta further advised that "'he wanted to have sex with children.'" 296 Kan. at 233.

In reversing Ta's convictions for aggravated indecent liberties, our Supreme Court held that, although awkward, the touches did not constitute lewd fondling or touching because they did not undermine the morals of the children or outrage the moral sense of a reasonable person. 296 Kan. at 243.

In the present case, Ward's admission to secretly holding hands with M.C. while in a private residence, viewed in the light most favorable to Ward, did not constitute lewd fondling or touching that would have supported providing the jury with an instruction on indecent liberties as provided in K.S.A. 2015 Supp. 21-5506(a)(1). Without more, hand holding under these circumstances was not sexually unchaste, licentious, obscene,

9

salacious, or causing outrage to the moral sense of a reasonable person. See *Ta*, 296 Kan. at 242-43. While holding M.C.'s hand to show affection may have been unsuitable given her age, similar to Ta's "awkward and strange" touching, *Ta*, 296 Kan. at 243, the evidence of hand holding under these circumstances did not factually support an instruction on indecent liberties. Moreover, there was no evidence that the hand holding was done with the intent to arouse or to satisfy the sexual desires of either Ward or M.C. This was a separate element of the offense of indecent liberties for which there was also insufficient evidence at trial.

We hold that an instruction on indecent liberties as set forth in K.S.A. 2015 Supp. 21-5506(a)(1) was not factually appropriate and, therefore, the trial court did not err by denying Ward's request for such a lesser included offense instruction.

Affirmed.

10